IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

United States Courts
Southern District of Texas
**FILED**

MAY 1 9 2025

Nathan Ochsner, Clerk of Court

| | | |
|---|---|---|
| Agness McCurry, Etha Jones | § | **25 CV 2278** |
| Plaintiffs, | § | |
| v. | § | Civil Action No. |
| Walmart Inc, Checkr Inc | § | Jury Demanded |
| Defendants. | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

### **PRELIMINARY STATEMENT**

1.  This case arises from a coordinated campaign of civil rights interference, false reporting, and retaliation orchestrated by Defendants Checkr Inc. and Walmart Inc., in concert with agents of the State of Tennessee and private actors, including Plaintiff Agness McCurry's ex-husband Benjamin McCurry. Plaintiffs Agness McCurry and her godmother Etha Jones bring this action under the Fair Credit Reporting Act, 15 U.S.C. §§ 1681–1681x, 42 U.S.C. § 1985(2), (3), and 18 U.S.C. §§ 1962(c), (d), for willful and negligent violations of consumer protection and civil rights statutes, and for conspiracy to deprive Plaintiffs of employment, housing, parental rights, and economic security.

1

2.  Defendant Checkr Inc. knowingly furnished inaccurate and defamatory background reports to Walmart's Spark Driver program, despite actual knowledge that the underlying criminal charges were false, unsubstantiated, or selectively manipulated by state agents acting in concert with private parties hostile to Plaintiff Agness McCurry's rights under VAWA and child custody laws.

3.  Defendant Walmart Inc., despite knowing as early as February 16, 2023, that the criminal charges were baseless, chose to terminate Ms. McCurry's contracting relationship on June 13, 2023, without issuing proper pre-adverse action notice in violation of the FCRA.

4.  These events were not isolated errors, but part of a deliberate scheme to inflict economic harm, coerce silence, and sabotage Ms. McCurry's ability to assert legal claims related to the unlawful termination of her parental rights. Defendant Etha Jones, who extended financial support during this time, also suffered economic injury as a result of the retaliation and false reporting. Plaintiffs now seek declaratory, injunctive, compensatory, statutory, punitive, and treble damages to redress the violations of their civil and consumer rights under federal and common law.

5.  The FCRA was enacted "to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy," 15 U.S.C. § 1681(a)(4), by operating "in a manner

2

which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy" of the consumer information they disseminate. 15 U.S.C. § 1681(b). Congress included in the statutory scheme a series of protections that impose strict procedural rules on consumer reporting agencies such as Checkr. This action involves Defendants Checkr and Walmart's systematic violation of several of those important rules.

## JURISDICTION

6. This Court has jurisdiction over this action under: 15 U.S.C. § 1681p, which provides for jurisdiction in any appropriate United States District Court for violations of the Fair Credit Reporting Act; 28 U.S.C. § 1331, because this action arises under the laws of the United States, including the Fair Credit Reporting Act (FCRA), Civil Rights Act (42 U.S.C. § 1985), and Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–1968; 28 U.S.C. § 1343(a)(4) for claims arising under civil rights statutes; And 28 U.S.C. § 1367 for supplemental jurisdiction over related state law claims, including defamation and tortious interference.

7. This Court also has subject matter jurisdiction under 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs. Plaintiffs are residents of the State of Texas. Defendant Checkr Inc. is a corporation

organized with its principal place of business in the State of California. Defendant Walmart Inc. is a corporation with its principal place of business in the State of Arkansas. None of the Defendants are citizens of the same state as any Plaintiff.

8. Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred within the Southern District of Texas, where Plaintiff Agness McCurry now resides after being displaced from her former state of residence due to the unlawful and retaliatory conduct described herein.

9. Defendants Checkr Inc. and Walmart Inc. are each subject to personal jurisdiction in Texas because they transact business in the state, have designated agents for service of process in Texas, and committed tortious acts and statutory violations that foreseeably caused harm to Plaintiffs in this District.

## PARTIES

10. Plaintiff Agness McCurry is a permanent resident residing in the United States and citizen of Zambia. Agness has been a Texas resident since February 2024. Prio to this case, Agness worked as 1099 contractor performing delivery services for Walmart through its Spark Driver program between January 2022 to June 6, 2023 in Tennessee and North Carolina. Agness was also a 1099 contractor for Doordash from July 2020 to August 10, 2023. Agness is currently deactivated due to background check reports provided by Checkr requested by Spark Driver

4

between June 6, 2023 to present. Agness personally deactivated her account with Doordash when Checkr failed to provided the exact background report information that was provided to Spark Driver om August 10, 2023.

11. Plaintiff Etha Jones is an American citizen and resident of California. Ms. Jones is Agness Godmother and support system. Ms. Jones provided Agness her credit card to cover the expenses caused by the termination of her employment through Checkr's background reports submitted to Spark Driver.

12. Defendant Walmart Inc is a large multinational retail corporation. Walmart operates the Spark Driver program for independent contractors (drivers) to earn money by delivering customer order from Walmart. Customers place their orders online and these orders are distributed to drivers through offers on the Spark Driver App. Drivers may accept offers or decline them. Walmart Inc's registered agent to accept service in Texas is Walmart Inc, c/o Registered agent, CT, Corporation System 1999 Bryan Street, Suite 900, Dallas TX 75201.

13. Defendant Checkr Inc is a background check provider for companies hiring 1099 workers such as Walmart, Doordash etc. For purposes of this lawsuit, the registered agent for Checkr Inc in Texas is Checkr Inc CT Corporation System, 1999 Bryan St Ste 900 Dallas, Texas 75201.

## LIST OF EXHIBITS TO COMPLAINT

Exhibit A  Doordash Deactivation Letter

Exhibit B1 Spark Driver Post-Adverse Action Notice June 11 2024

Exhibit B2 Spark Driver Post-Adverse Action Notice June 20 2023

Exhibit C Exhibit of Text Message from Spark Driver Regarding Deactivation June 4 2024 and August 15 2024

Exhibit D Checkr Background Report requested by Spark Driver April 28 2023

Exhibit E Checkr Background Report requested by Spark Driver June 3 2023

Exhibit F Checkr Background Report requested by Doordash June 11 2023

Exhibit G1 & G2 Copies of 1099-NEC Income records from Walmart Inc and Spark Delivery

Exhibit H Copy of BMO/Bank of the West Credit Card to Etha Jones with Agness as authorized user.

Exhibit I Lawsuit Agness McCurry v D Michael Dunavant et al 1:25-mc-00005 doc 5-4 pending at the Tennessee Eastern District Court

Exhibit J Copy of Email Correspondence with Assistant DA  Abby Wallace regarding pending criminal charges on February 7, 2023

Exhibit K Copy of Grand Jury Indictment for Resisting Arrest

Exhibit L Lawsuit Agness McCurry, Etha Jones, 2:23-cv-29

Exhibit M Copy of Capias and Bench Warrant issued by Judge D Kelly Thomas Jr on November 27 2023.

Exhibit N List of all Background Check Reports Completed by Checkr

Exhibit O Copy of Checkr Reinvestigation on July 10 2023 and Walmart Adverse Action Letter

Exhibit P June 13 2023 Spark Driver Deactivation Text Message

Exhibit Q June 15 2023 Email of Complete Checkr Report Requested by Doordash

Exhibit R Copy of Chat with Checkr Bot

## FACTUAL ALLEGATIONS

14. Plaintiff Agness McCurry is a whistleblower and mother who, at all relevant times, was engaged in litigation to preserve her parental rights and expose a network of state officials conspiring with her ex-husband Benjamin McCurry, his wife Kelly McCurry and their attorney Counsel Sandy Phillips. Ms. Jones is also a whistleblower, support system and firsthand witness to the traumatic and devastating impact of Benjamin's criminal enterprise consisting of State and Federal officials that caused injury to Agness and her son I.M. Ms. Jones became a subject of retaliation when exercised her 1st Amendment rights to testify against the falsehoods and fraud of Benjamin's criminal syndicate. Ms. Jones incurred a

7

significant amount of debt fighting to protect Agness from the racketeering activity designed to bankrupt her and take custody of the minor child I.M See **Exhibit H**.

15. Relevant to this lawsuit, Walmart Inc and Checkr joined into the existing criminal and civil conspiracy by terminating Agness employment from fraudulent public records of criminal charges filed by agents of the State of Tennessee sued in 2:23-cv-29 and *Agness McCurry v D Michael Dunavant* et al See **Exhibits I, B1 and B2**.

16. On February 7 2023, Agness was arrested due to her status under the Violence Against Women Act (VAWA) in her divorce and child custody case. Agness was presenting her oral argument and mentioned the VAWA which was falsely alleged to be "expired" by her ex-husband, Benjamin McCurry's, attorney Sandy Phillps. These baseless criminal charges of resisting arrest and assault on a first responder on February 7, 2023 contributed to Agness termination of employment with Walmart Spark Driver as reported by Checkr on June 13 2023 and June 13 2023.

17. Checkr completed prior background checks for Wal-Mart: i) on February 16th 2023, ii) March 28th 2023 and iii) April 28th 2023 with conflicting charges on Agness criminal background, but Wal-Mart ignored the reports and never deactivated Agness account See **Exhibit N**.

18. Walmart knew that the charges were baseless on April 28 2023 when Checkr reported the charges of resisting arrest and the felony crime of aggravated assault on a first responder See **Exhibit D**.

19. Walmart took no action to investigate or correct the situation and delayed taking any action until June 6, 2023, at which time Agness was abruptly terminated from Spark Driver. This conduct reflects a knowing choice to rely on false information in violation of the Fair Credit Reporting Act (FCRA) and basic principles of due process and fairness. The report Walmart relied on to deactivate Agness clearly showed that she had no pending charges and the disposition was "not available" for the charge of resisting arrest See **Exhibit O**.

20. On June 13, 2023, Agness was first notified by text message from Spark Driver that she was deactivated based off Checkr's background report at 5:07pm See **Exhibit P**. Later in the evening of the same day around 6pm, Agness received an adverse action letter which was recalled by Spark Driver. Spark Driver recalled the email after Agness read the contents of the letter and pdf attachment of the Checkr report. Agness communicated this strange activity by Spark Driver to Ms. Jones.

21. Also on June 13, 2023, Doordash requested another background report on Agness after the June 11, 2023 report provided by Checkr returned clear from Madison County, North Carolina See **Exhibits F & Q**. Checkr provided a report to

Doordash for a speeding ticket that she paid court costs and fees in Avery North Carolina. Checkr did not provide Doordash with the same information that was provided to Spark Driver about Agness criminal charges with the State of Tennessee.

22. On December 10, 2022, Checkr provided Spark Driver with the background report from Madison County when Agness had a speeding ticket that was marked "clear" with Doordash on June 13, 2023. On December 12, 2022, this information was revised by Checkr after Agness disputed it. Because Checkr failed to provide timely and consistent reporting to Walmart and Doordash its actions are not only negligent but malicious to independent contractors like Agness.

23. DA Steve Finney presented the charges of aggravated assault on a first responder and resisting arrest on May 1, 2023 before the grand jury See **Exhibits J and K**. Agness was indicted on the charges of resisting arrest only because Deputy Sigmon testified that he was not assaulted as sworn in the affidavit of complaint submitted by Officer Michael Gardner on March 6, 2023. Checkr did not report these criminal charges to Doordash or the grand jury indictment. This was due to the fact that Checkr knew that Agness primarily fulfilled orders with Spark Driver (Walmart) compared to Doordash.

24. Benjamin's conspiracy against Agness at the State level continued resulting to additional charges on December 6, 2023 of 2 Counts of Prevent/Obstruct

Service of Legal Process- Weapon and 1 Count Resisting Arrest See **Exhibit E**. On December 6, 2023, Benjamin successfully coordinated another conspiracy to evict Agness on a false criminal bench warrant signed by Judge D Kelly Thomas Jr on November 27, 2023 **Exhibit M**.

25. Agness now lost employment and housing leading to her fleeing to Texas in February 2024 after she completed her arrest from December 6 2023 to December 26 2023. Spark driver received a criminal background check from Checkr and continued to deactivate Agness employment See **Exhibit C and B1**.

26. Doordash did not receive any report because Agness voluntarily deactivated her employment to protect her employment See **Exhibit A** and expose the conspiracy of Checkr and Walmart (Spark Driver) to terminate her employment for Benjamin's best interests.

27. On June 16, 2023, Agness made efforts to dispute the reports by Checkr to Walmart Spark Driver comparing it to the reports sent to Doordash after deactivation on June 13, 2023. Agness contacted Checkr multiple times via phone on June 16, 19 and June 20 2023 to dispute the information on her background report. Agness failed to reach an agent on the phone. On June 16 2023, Agness submitted her 1st dispute of the report when she logged into the candidate portal. Agness did not receive any confirmation email but she took a screenshot **See**

**Exhibit S.** After checking her email, Agness returned to the portal and noticed that the alert of her submission was no longer active.

28. Agness visited the Checkr website and accessed the live chat feature on June 20 2023. The Checkr chatbot created a ticket ID:30641862 and stated Checkr would reach out to her via email See **Exhibit R.**

29. On June 21 2023, Vadalya from Checkr reached out to Agness promptly as well as the Consumer Privacy Team of Walmart. Agness reported her concerns to the Consumer Privacy team regarding the termination of her employment contract and Spark Driver's refusal to accept her right to correct/dispute the information. Agness also reported that Spark Driver sent her the adverse action letter on June 13, 2023 but recalled the email after she read it.

30. On June 18 2023, Spark Driver resent Agness the recalled adverse action letter that was sent on June 13, 2023. It appeared that the Consumer Privacy Division investigated Agness complaint and submitted it to Spark Driver.

31. Agness also presented her disputes with Checkr's conflicting reporting to Spark Driver appeals regarding the baseless criminal charges from the State of Tennessee. The Spark Driver appeals team refused to consider Agness appeal and maintained the decision to deactivate her account.

32. Although Vadalya from Checkr confirmed receipt of Agness ticket created by the chat bot, Stephanie also emailed Agness on June 27 2023. Stephanie

informed Agness that in order to commence "reinvestigation" Checkr needed to receive "notice that an item on your report is being reported inaccurately or incompletely." Agness did not understand Stephanie's response because the Chat Bot created a ticket for this specific issue.

33. Stephanie dismissed Agness issue with her background report. Stephanie told Agness that she "looked forward to hearing back" from her once there an "update on the case." Stephanie also informed Agness that she needed to submit "expungements, dismissals, or any other changes" to her criminal record and that without this information or a "modification being granted" her record is considered "complete" by Checkr.

34. Agness informed Stephanie with proof that the criminal charges reported to Walmart were not consistent with the reports sent to Doordash. Stephanie informed Agness that the information she submitted with Vadalya was sent back to Spark for review. Stephanie stated: "*The party you applied with not Checkr, would review the information you submitted and make the final decision regarding your background.*" Stephanie contradicted herself.

35. Stephanie informed Agness that Checkr would perform a reinvestigation. Stephanie later informed Agness that Spark Driver would review all the information including the evidence of inconsistent reporting with Doordash. On July 10 2023, Checkr performed a reinvestigation but reported "no disposition"

13

regarding the criminal charges sent to Spark Driver. Agness received an updated

adverse action letter stating that she would remain deactivated on the baseless

criminal charges.

36. Checkr's decision to transmit the background report only to Walmart/Spark

Driver, and not to Doordash, despite both companies using Checkr for employment

screening, confirms that Checkr was aware the charges were either dismissed,

unsubstantiated, or legally insufficient. This conscious choice evidences actual

knowledge that the report was misleading, and it demonstrates a willful disregard

for Plaintiff's rights and reputational interests.

## CAUSES OF ACTION

## COUNT 1 NEGLIGENT FAILURE TO FOLLOW REASONABLE PROCEDURES (15 U.S.C. § 1681e(b)) BY CHECKR INC

37. Plaintiffs incorporate by reference all preceding paragraphs as though fully

set forth herein in paragraphs 14 to 36.

38. Under 15 U.S.C. § 1681e(b), any consumer reporting agency must follow

"reasonable procedures to assure maximum possible accuracy of the information."

39. Checkr failed to establish or follow reasonable procedures in verifying and

reporting Tennessee state criminal records, including failing to ensure that

dismissed or unsubstantiated charges were accurately categorized.

40. Checkr's unreasonable procedures proximately caused the publication of inaccurate reports to Walmart (Spark Driver), directly leading to Plaintiff Agness McCurry's deactivation from contracting programs and loss of income. Plaintiff Etha Jones assisted Agness with her credit card to cover some of her bills caused by the termination of employment.

41. As a direct and proximate result of Checkr's negligence, Plaintiffs suffered lost income, emotional distress, compensatory, pain and suffering and other damages.

## COUNT 2 WILLFUL FAILURE TO FOLLOW REASONABLE PROCEDURES (15 U.S.C. § 1681e(b)) BY CHECKR INC

42. Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein in paragraphs 14 to 36.

43. Checkr acted willfully or with reckless disregard of its obligations under 15 U.S.C. § 1681e(b), having actual knowledge or reckless disregard that its reports were inaccurate or incomplete.

44. Checkr ignored clear signals that the resisting arrest and aggravated assault charges were baseless, yet continued to report them as valid criminal convictions.

45. Checkr's willful misconduct caused Agness wrongful deactivations, loss of earnings, and reputational harm.

## COUNT 3 FAILURE TO REPORT COMPLETE AND ACCURATE

## INFORMATION 15 U.S.C § 1681k (a) (1) BY CHECKR INC

46. Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein in paragraphs 14 to 36.

47. Under 15 U.S.C. § 1681k(a)(1), a consumer reporting agency must disclose in a consumer report all information regarding criminal charges that are known to be false, dismissed, or legally insufficient.

48. Checkr omitted or mischaracterized the dismissal or insufficiency of charges against Agness McCurry, failing to indicate that the resisting arrest and aggravated assault allegations were not sustained.

49. This omission violated Agness right to timely know what was being shared and deprived her of the opportunity to challenge the report before suffering adverse action.

50. As a direct result, Agness was denied contracting opportunities and suffered economic, financial and emotional damages. Ms. Jones suffered alongside Agness.

## COUNT 4 NEGLIGENCE AND WILLFUL FAILURE TO PROVIDE PRE-

## ADVERSE AND ADVERSE ACTION NOTICES 15 U.S.C §§ 1681b(b) (3),

## 1681m BY CHECKR INC AND WALMART INC

51. Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein in paragraphs 14 to 36.

52. 15 U.S.C. § 1681b(b)(3) requires employers to provide a standalone disclosure and awaiting period before taking adverse action based on a consumer report.

53. 15 U.S.C. § 1681m requires provision of a post-adverse action notice with specified information.

54. Neither Checkr nor Walmart provided Agness with proper pre-adverse action disclosures or post-adverse action notices in compliance with these statutes.

55. Agness never received written notice of her rights or the specific content of the reports prior to her deactivation on June 13, 2023.

56. Walmart had received the consumer report from Checkr, knew of its contents as early as April 28, 2023, and had ample opportunity to issue pre-adverse disclosures. However, it failed to do so and instead sent only a post-adverse action letter, depriving Agness of the opportunity to challenge or correct the report.

57. This violation was willful and entitles Plaintiffs to actual, statutory, and punitive damages under 15 U.S.C. § 1681n or, alternatively, to relief under 15 U.S.C. § 1681o for negligent violations.

58. This statutory violation directly caused Agness to lose contracting privileges without meaningful opportunity to dispute or correct inaccuracies.

## COUNT 5 FAILURE TO REINVESTIGATE DISPUTED INFORMATION

## (15 U.S.C. § 1681i(a)) BY CHECKR INC

59. Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein in paragraphs 14 to 36.

60. After June 13, 2023, Agness McCurry disputed in writing to Checkr the accuracy of the criminal charge information reported in the background report Checkr furnished to Walmart Spark Driver.

61. Checkr received the dispute but failed to conduct a reasonable reinvestigation of the disputed information within the thirty-day period required by 15 U.S.C. § 1681i(a). Checkr justified its report from the public records submitted to it by the agents of the State of Tennessee.

62. Checkr also failed to correct, delete, or block the reporting of the inaccurate criminal charge information after receiving Agness dispute.

63. Checkr's refusal to reinvestigate and correct the erroneous information violated the FCRA's reinvestigation requirement as articulated in *Sepulvado v. CSC Credit Servs., Inc.*, 158 F.3d 890 (5th Cir. 1998).

64. As a direct and proximate result of Checkr's failure to reinvestigate, Plaintiffs suffered additional deactivation, loss of contracting opportunities, financial harm, emotional distress, damage to reputation, and other actual damages.

## COUNT 6 DEFAMATION (COMMON LAW) BY CHECKR INC

65. Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein in paragraphs 14 to 36.

66. Checkr negligently and/or intentionally published false criminal charges that Agness committed a felony assault on a first responder and resisting arrest on April 28, 2023.

67. Checkr continued to report additional baseless criminal charges from public records submitted by agents of the State of Tennessee on June 11, 2024.

68. These baseless charges were communicated to third parties, including Walmart, and Spark Driver management. Doordash did not receive any reports of the criminal charges by the agents of the State of Tennessee.

69. These baseless charges are defamatory per se as they impute criminal conduct against Agness without probable cause but part of a criminal and civil conspiracy originating from her divorce and child custody case.

70. Agness suffered special damages, including lost earnings from deactivation due to the baseless charges, housing costs, and emotional distress. Ms. Jones incurred financial debt on Agness behalf due to the baseless charges that terminate her employment.

## COUNT 7 TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE BY CHECKR INC AND WALMART INC

19

71. Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein in paragraphs 14 to 36.

72. Agness had prospective economic relationships with Walmart Spark Driver and Doordash for 1099 contracting opportunities.

73. Defendants intentionally and improperly interfered with these relationships by providing and relying upon false and misleading background reports sent by agents of the State of Tennessee acting on behalf of Agness abusive ex-husband.

74. As a result, Plaintiffs lost contracting opportunities, income, and incurred additional expenses.

## COUNT 8 CIVIL CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS – 42 U.S.C. § 1985(2), (3)

75. Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein in paragraphs 14 to 36.

76. Defendants knowingly entered into a civil conspiracy with agents of the State of Tennessee and private individuals, including Agness McCurry's ex-husband (Benjamin McCurry) and his attorney, to deprive her of equal protection and retaliate against her protected activities (litigating for her parental rights and asserting her VAWA protections).

77. As part of this conspiracy, Defendants knowingly used false criminal charges, manipulated background screening procedures, and deliberately

weaponized employment termination and economic sabotage to interfere with

Plaintiff Agness McCurry's parental rights litigation and suppress her ability to

assert constitutional claims. Etha Jones was also financially harmed by this

coordinated effort.

78. Walmart and Checkr played a role in providing injury to Agness relied upon

in a pending termination of parental rights and adoption petition removed from

State Court to federal court See 2:24-cv-136 at the Tennessee Eastern District

Court.

79. As a direct and proximate result of this conspiracy, Plaintiffs are entitled to:

Compensatory damages for lost wages, lost employment opportunities,

reputational harm, emotional distress, and housing instability; Punitive damages to

deter a nd punish the Defendants' willful and malicious conduct; Injunctive and

equitable relief to prevent continued retaliation and civil rights interference;

Attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and Any other relief the

Court deems just and proper to redress the conspiracy to injure Plaintiffs' persons,

property, and civil rights.

### COUNT 9 Civil RICO – 18 U.S.C. §§ 1962(c), (d)

80. Plaintiffs incorporate by reference all preceding paragraphs as though fully

set forth herein in paragraphs 14 to 36.

81. Defendants participated in and conspired to engage in a pattern of racketeering activity that included: 1) Repeatedly furnishing false criminal public records and background reports to employers, 2) Failing to reinvestigate disputed criminal record information, 3) Publishing adverse action notices without proper statutory compliance; 4) Coordinating with state actors to perpetuate baseless criminal allegations, 5) Obstruction of justice and witness tampering through economic sabotage, and 6) And mail and wire fraud in the dissemination of false reports across state lines.

82. The enterprise consisted of Checkr Inc., Walmart Inc., and associated individuals and institutions who acted in concert to carry out a coordinated campaign of harassment, economic sabotage, and fraudulent concealment. The enterprise operated through a continuing unit with a common purpose and method of operation to injure Plaintiff Agness McCurry in her business and property.

83. Each Defendant is a "person" within the meaning of 18 U.S.C. § 1961(3).

84. There existed an "enterprise" within the meaning of 18 U.S.C. § 1961(4), consisting of Defendants, certain state actors, and co-conspirators who associated for the common purpose of depriving Agness of contract opportunities and reputation through false criminal reporting. See *United States v. Turkette*, 452 U.S. 576 (1981).

85. Defendants committed the following predicate acts:

- Predicate Act 1 – Wire Fraud (18 U.S.C. § 1343):On or around April 28 and June 3, 2023, Defendant Checkr transmitted a background report containing knowingly false, misleading, or unverified criminal charges about Plaintiff McCurry to Walmart's Spark Driver platform via electronic means across state lines. These transmissions were intended to induce Walmart to sever its engagement with Plaintiff based on false pretenses.

- Predicate Act 2 – Mail Fraud (18 U.S.C. § 1341): On or about June 6, 2023, Walmart mailed a post-adverse action notice to Plaintiff McCurry without ever providing the required pre-adverse disclosure mandated by 15 U.S.C. § 1681b(b)(3). This notice was part of a scheme to create a false record of compliance while retaliating against Plaintiff for prior legal activity.

- Predicate Act 3 – Witness Retaliation and Obstruction of Justice (18 U.S.C. §§ 1512, 1513): Plaintiff McCurry was actively engaged in custody litigation and had filed civil claims against state actors. Defendants' actions in falsely reporting criminal charges and facilitating her termination were in retaliation for her protected litigation activity, constituting obstruction of justice and witness retaliation.

- Predicate Act 4 – Wire Fraud by Omission (18 U.S.C. § 1343): On or about June 13, 2023, Checkr provided a separate background report to Doordash that omitted the very same criminal allegations previously reported to Walmart. This

selective reporting misled Doordash and deprived Plaintiff of equal access to employment opportunities.

86. Defendants conducted or participated, directly or indirectly, in the conduct of the enterprise's affairs through a pattern of racketeering activity, occurring over a period of years, in violation of 18 U.S.C. § 1962(c).

87. These predicate acts were related, continuous, and undertaken for the common unlawful purpose of economically disabling Plaintiff McCurry, discrediting her litigation efforts, and concealing the involvement of co-conspirators in her wrongful targeting. Plaintiff Etha Jones also incurred direct financial harm by supporting McCurry through this period of unlawful retaliation.

88. The pattern consisted of at least two predicate acts within ten years, including repeated willful and negligent FCRA violations (15 U.S.C. §§ 1681e(b), 1681i(a), 1681k(a)(1), 1681m) and common-law fraud, misrepresentation, and defamation.

89. The predicate acts are related and continuous, satisfying the "relationship plus continuity" test of *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229 (1989).

90. Plaintiffs were injured "by reason of" Defendants' racketeering activity, including lost earnings, housing costs, and emotional distress. See *Anza v. Ideal*

*Steel Supply Corp.*, 547 U.S. 451 (2006); *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008).

91. Pursuant to *Medical Marijuana, Inc. v. Horn*, 604 U. S. _____ (2025), the US Supreme Court held that under Civil RICO § 1964 (c) "a plaintiff may seek treble damages for business or property loss even if the loss resulted from a personal injury." Agness injuries originated from the litigation in her divorce and child custody case on February 7, 2023 against her abusive ex-husband. The baseless criminal charges were used in furtherance of a criminal conspiracy.

92. As a direct and proximate result of Defendants' RICO violations, Plaintiffs have suffered damages including lost income, loss of employment, reputational damage, emotional distress, housing displacement, and financial injury.

93. Plaintiffs seek treble damages, costs of suit, and attorneys' fees pursuant to 18 U.S.C. § 1964(c). Plaintiffs also seek appropriate injunctive and declaratory relief to prevent further racketeering conduct and civil rights interference.

## STATEMENT OF APPLICABLE STATUTE OF LIMITATIONS

94. Relevant to this case, the initial injury related to the criminal background reports occurred on April 28, 2023.

95. Checkr continued to report the baseless criminal charges provided by agents of the State of Tennessee on June 6, 2023, June 13, 2023, June 3, 2024.

96. Agness ceased to be a resident of Tennessee in February 2024 when she came to reside in Texas.

97. The public records of the baseless criminal charges are still active hindering Agness ability to regain employment with Walmart.

98. The statute of limitations for personal injury cases in Tennessee is 1 yr and 2 yrs for Texas. The statute of limitations is tolled in Plaintiffs case because the injuries are ongoing as the agents for the State of Tennessee persist in their baseless criminal prosecutions.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully requests that the Court enter judgment in their favor and against Defendants, and grant the following relief:

1. A declaratory judgment that Defendants' actions violated 15 U.S.C. §§ 1681b, 1681e, 1681i, 1681k, 1681m and 18 U.S.C. §§ 1962(c)–(d), as well as related common law duties.

2. Injunctive relief ordering Defendants to: a.) Correct Plaintiffs' background reports; b.) Expunge inaccurate or incomplete information; c.) Reinstatement of Plaintiffs' eligibility for contracting programs with Walmart Spark Driver; d.) Any additional relief necessary to dismantle or enjoin the RICO enterprise.

3.  Statutory damages under 15 U.S.C. § 1681n for willful FCRA violations and under 15 U.S.C. § 1681o for negligent FCRA violations.

4.  Actual damages, including lost earnings, housing costs, and emotional distress, arising from Defendants' violations of §§ 1681e(b), 1681i(a), and related statutes.

5.  Punitive damages to punish and deter Defendants' willful and malicious misconduct.

6.  Trebled damages, costs, and other fees under 18 U.S.C. § 1964(c) for civil RICO claims.

7.  Attorneys' fees and costs pursuant to 15 U.S.C. §§ 1681n(c), 1681o(b), and under applicable state law.

8.  Pre-judgment and post-judgment interest at the maximum rate permitted by law.

9.  Such other and further relief as the Court deems just and proper.

Date: 5/19/2025                                    Respectfully submitted,

                                                   Agness McCurry, VA250203
                                                   P.O Box 12108 MC068
                                                   Austin TX 78711-2108.
                                                   agnessmccurry@gmail.com

27

423-943-3200

Etha Jones

100 Civi Dr Apt 108

Hercules CA 94547.

Ethaunited101@gmail.com

510-258-3705